FILED
2025 Sep-30  AM 08:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

BRITTANY WILLIAMS,       )
         )
    Plaintiff,      )
         )
v.          )   Case No. 2:23-cv-00487-SGC
         )
UAB HOSPITAL MANAGEMENT,  )
LLC, *et al.*,       )
         )
    Defendants.   )

## MEMORANDUM OPINION[1]

This is an employment discrimination case brought against UAB Hospital Management, LLC, India Alford, and Frankie Wallis by Brittany Williams. The case is before the court on the defendants' motion for summary judgment. (Doc. 39).[2] For the reasons stated below, the court will grant the motion and enter judgment in favor of the defendants.

## I.    Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. 12, 24; *see* Doc. 21).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute of material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute of material fact for trial.  *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Id.* at 248.  If the evidence is merely colorable or not significantly probative, summary judgment is appropriate.  *Id.* at 249-50 (internal citations omitted).  All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## II.    Summary Judgment Facts[3]

The University of Alabama at Birmingham ("UAB") is a public university and academic medical center located in Birmingham, Alabama.  (Doc. 40-1 at 2). As relevant here, it operates a "main hospital" and the Gardendale Freestanding Emergency Department ("GFED").  (Doc. 40-1 at 2-3).  UAB Hospital Management ("UABHM") supports the university in connection with the operation of its medical facilities, including by employing nursing personnel for the main hospital and GFED.    (Doc. 40-1 at 3, 6).  UABHM hired the plaintiff to work as a patient care technician ("PCT") beginning August 10, 2015.  (Doc. 40-1 at 4; Doc. 40-4).

The plaintiff initially worked as a PCT in the main hospital under the supervision of Nurse Manager Jason Hatcher.  (Doc. 40-6 at 8, 16).  When the plaintiff, who is black, planned to take three days of leave after her uncle died, Hatcher asked whether that was a "black thing" and whether the plaintiff and her

---

[3] The following facts are undisputed, unless otherwise noted.  The court views the facts in the light most favorable to the plaintiff, as the non-movant, and gives the plaintiff the benefit of all reasonable inferences.  The court largely has excluded from its recitation of facts those facts that are not material to disposition of the pending motion.  Some immaterial facts are included for context.  The court also has excluded from its recitation of facts those facts cited by the defendants but not marshaled by the plaintiff in support of any claim.  The court infers the plaintiff does not rely on facts cited by the defendant to support her claims, insofar as she does not reference the facts in her own arguments.  *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather the onus is upon the parties to formulate arguments.") (internal citation omitted); *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1357 n.4 (S.D. Fla. 2017) ("[A] party who aspires to oppose a motion must spell out his arguments squarely and distinctly, or else forever hold his peace.") (internal quotation marks omitted and alteration adopted).

family were going to get in the casket with her uncle because "[w]hite people don't take that long to put their family members in the ground." (Doc. 40-7 at 18). Hatcher also told the plaintiff his family had owned slaves and that a black woman to whom his family referred as "mammy" helped take care of him as a child. (Doc. 40-7 at 17).[4] The plaintiff reported Hatcher's comments to the UAB Human Resources Department, after which she was transferred to GFED and had no further issues with Hatcher. (Doc. 40-7 at 18).

On August 1, 2019, after her transfer to GFED, the plaintiff complained about a remark alleged to have been made by Alishah Ali, a contracted medical scribe. According to the plaintiff, Assistant Nurse Manager Megan Carter instructed employees standing together to "disperse." After the plaintiff later jokingly told employees gathered together to "disperse," Ali replied that Carter's earlier comment "was only meant for black people." (Doc. 40-8 at 2). When Carter heard or learned of the comment, she threw a stack of sticky notes at the plaintiff and laughed. (Doc. 40-7 at 21). The plaintiff sent an e-mail to Carter and two other assistant nurse managers complaining about Ali's comment. (Doc. 40-8 at 2). Two other employees complained about Ali's comment as well, adding that they also found

---

[4] In her response to the defendants' summary judgment motion, the plaintiff also references comments of a sexual nature that Hatcher made to her. (Doc. 46 at 20). The court will not consider those comments because the plaintiff has not asserted a sex discrimination claim against the defendants.

4

Carter's initial response to the comment offensive.  (Doc. 40-8 at 3, 5-6).  An investigation was commenced by India Alford, the Director of Nursing at GFED, Frankie Wallis, the Director of Emergency Services at GFED, and others the same day the complaints were received.  (*See generally* Doc. 40-8).  Alford interviewed the plaintiff as part of the investigation, and during her interview, the plaintiff alleged Ali's comment was not the first offensive one Ali had made.  According to the plaintiff, Ali also had said her family owned a gas station but " 'didn't mess with [racial slur]'" and accused the plaintiff of being from " 'the ghetto'" and having stolen her car.  (Doc. 40-8 at 8).[5]  Following the investigation, UABHM never "returned" Ali to GFED, and Carter was counseled about the incident.  (Doc. 40-6 at 14-16).

The plaintiff suffers from anxiety, depression, and attention-deficit/hyperactivity disorder ("ADHD").  (Doc. 40-7 at 5, 7, 28).  In October 2020, the plaintiff requested intermittent leave under the FMLA to attend weekly appointments for treatment of her anxiety and ADHD.  (Doc. 40-11).  The UAB Leave of Absence Team approved the plaintiff's request.  (Doc. 40-10).  The plaintiff testified when deposed that "management" inquired into the nature of the condition

---

[5] The quotations included in the foregoing sentence are found in Alford's notes from the interview. Alford substituted the bracketed text "racial slur" for the actual offensive term used by Ali, whatever it may have been.  (Doc. 40-8 at 8).

for which she took intermittent FMLA leave "constantly" and identified Alford as one of the members of "management" who made these inquiries.  (Doc. 40-7 at 29).

Alford and Wallis met with the plaintiff on July 27, 2021.  (Doc. 40-17 at 3; Doc. 40-24 at 2-3).  The plaintiff made an audio recording of the meeting, and the defendants have submitted a transcript of the audio recording.  (Doc. 40-20; Doc. 40-21).  One purpose of the meeting was to discuss purported deficiencies in the plaintiff's job performance.  (Doc. 40-21 at 3).  Alford also advised the plaintiff she had exhausted her paid intermittent FMLA leave and that going forward the leave would be unpaid.  (Doc. 40-21 at 4).  The plaintiff asked whether she could receive donated time from other employees to avoid going into unpaid status, and Alford answered that UAB's Sick Time Donation Procedure prohibited that practice for employees taking intermittent FMLA leave.  (Doc. 40-21 at 4-7).  The plaintiff challenged Alford's answer, and Alford defended it.  (Doc. 40-21 at 4-7).

Alford then advised the plaintiff that in the alternative to taking unpaid, intermittent FMLA leave she could resign from her position.  (Doc. 40-21 at 7).  The plaintiff responded, "So you're asking me to resign because I don't have time?" (Doc. 40-21 at 7).  Alford replied in the negative and stated she was giving the plaintiff the opportunity to resign.  (Doc. 40-21 at 7).  The plaintiff also accused Alford of telling her that she could not use the rest of her intermittent FMLA leave if she did not resign.  (Doc. 40-21 at 8).  Alford denied the accusation.  (Doc. 40-21

at 8).  The plaintiff then accused Alford of telling "one lie after another" about her during the meeting.  (Doc. 40-21 at 9).  Alford and Wallis ended the meeting and informed the plaintiff they were placing her on administrative leave after the following exchange:

> MS. WILLIAMS: Okay. So do patient care come first or report to my A[N]M first?  Tell me which one.  Does patient care come first or reporting to my A[N]M?
>
> MS. ALFORD: Brittany, I'm going to tell you –
>
> MS. WILLIAMS: No. I'm going to tell you because that's bull –

(Doc. 40-6 at 44; Doc. 40-21 at 11).

Alford and Wallis have submitted declarations stating the plaintiff alternated between standing, sitting, and pacing during the meeting; persisted in interrupting them; spoke with a progressively louder voice, resulting in Alford having to request that the plaintiff lower her voice; pointed her finger at them; and exhibited body language they perceived as aggressive.  (Doc. 40-17 at 4; Doc. 40-24 at 3).[6]  They also state in their declarations that, based on the plaintiff's behavior, they were fearful the plaintiff might physically assault one of them or a co-worker.  (Doc. 40-

---

[6] An affidavit is a sworn statement, meaning it is made under oath before a notary or other oath-taker and affixed with a notary seal.  *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022).  An unsworn declaration may serve as a substitute for an affidavit for summary judgment purposes if the declaration concludes with the statement "I declare under penalty of perjury that the foregoing is true and correct," or a substantially similar statement, and the declaration is signed and dated by the declarant.  § 1746(2); *Roy*, 53 F.4th at 1347-48.  The declaration supplied by Alford and Wallis comply with the requirements of § 1746(2).

17 at 4; Doc. 40-24 at 4).  The audio recording of the meeting corroborates the statements made by Alford and Wallis that the plaintiff spoke with a progressively louder voice and persisted in interrupting them.  (Doc. 40-20).

On August 18, 2021, Alford sent a letter to the plaintiff terminating her employment.   The stated reason for termination was the inappropriate and unprofessional behavior the plaintiff exhibited during the July 27, 2021 meeting. (Doc. 40-33).  After the termination of her employment, the plaintiff commenced this action.  She asserts four claims in her amended complaint: (1) a disability-based harassment claim against UABHM under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; (2) a race-based harassment claim against UABHM, Alford, and Wallis under 42 U.S.C. § 1981; (3) an interference claim against UABHM under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (the "FMLA"); and (4) a retaliation claim against UABHM, Alford, and Wallis, which the court construes as brought under the Rehabilitation Act, § 1981, and the FMLA.  (Doc. 14).[7]

## III.   Discussion

UABHM argues the Eleventh Amendment to the U.S. Constitution immunizes it from suit under § 1981 and the FMLA.  (Doc. 41 at 11-17).  Alford and Wallis make the same argument with respect to the § 1981 claim asserted against them in

---

[7] The plaintiff pleaded only a § 1981 retaliation claim in her amended complaint.  (Doc. 14). However, the defendants have addressed the plaintiff's retaliation claim as brought under the Rehabilitation Act and the FMLA, as well.  (Doc. 41 at 23).

their official capacities.  (Doc. 42 at 8-9).[8]  The defendants also assert they are entitled to summary judgment on the merits of all the plaintiffs' claims.  (Docs. 41 at 17-29; Doc. 42 at 9-17).

### A.    Eleventh Amendment Immunity

When a defendant argues it is entitled to Eleventh Amendment immunity and also argues it is entitled to judgment on the merits, the former argument may be interpreted as a conditional assertion of the Eleventh Amendment.  *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1257-58 (11th Cir. 2001).  In other words, the defendant insists on the defense only if necessary to prevent a judgment against it on the merits.  *Id.* at 1258.  "[T]he conditional assertion of the Eleventh Amendment gives a federal court the discretion to dispose of the merits favorably to the state or its officials if it chooses to do so."  *Id.* at 1259.  "Given modern caseload burdens, one of the paramount considerations in deciding whether to accept such an invitation will be the difficulty of the Eleventh Amendment issues compared to the merits issues."  *Id.*

---

[8] Alford and Wallis additionally argue for the first time in their reply brief that they are entitled to qualified immunity with respect to the § 1981 claim asserted against them in their individual capacities.  (Doc. 48 at 2-5).  The court declines to address this argument because it was made for the first time in the individual defendants' reply brief and these defendants are entitled to summary judgment on the § 1981 claim regardless of their entitlement to qualified immunity.  *See Pearl v. Mad Engine, Inc.*, 2015 WL 5179517, at *3 n.6 (N.D. Ala. Sept. 4, 2015) ("A new issue cannot be raised for the first time in a reply brief the non-movant has no opportunity to answer.").

The court interprets the immunity arguments here as conditional assertions of the Eleventh Amendment because the defendants have presented the court with alternative arguments. Furthermore, the court elects to dispose of the claims as to which Eleventh Amendment immunity is asserted on the alternative grounds presented by the defendants. The question of whether UABHM and its supervisory employees are arms of the State of Alabama entitled to the immunity extended to the State by the Eleventh Amendment appears to be an open question. On the other hand, as discussed below, it is clear the defendants' alternative arguments for summary judgment in their favor are meritorious. Faced with the options of deciding a matter of first impression or making a straightforward merits-based determination, the more prudent course of action is to leave the former question for a later day.

### B.    Merits Analysis

#### 1.    Harassment Claims

The Rehabilitation Act prohibits federal executive branch agencies and recipients of federal financial assistance from discriminating against disabled employees. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1333 (11th Cir. 2022) (citing 29 U.S.C. § 794(a)). Section 1981 protects against race-based employment discrimination. *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1336 (11th Cir. 2024). The Eleventh Circuit has assumed without deciding that a harassment claim – also known as a hostile work environment claim – is cognizable

under the Rehabilitation Act and analyzed the claim using the framework applicable to a harassment claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See Wolfe v. Postmaster Gen.*, 488 F. App'x 465, 469 (11th Cir. 2012). Like a disability-based harassment claim under the Rehabilitation Act, a race-based harassment claim under § 1981 is analyzed using the framework applicable to a harassment claim brought under Title VII. *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002).

This framework requires a plaintiff to show (1) she belongs to a protected group, (2) she has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment," and (5) her employer is responsible for such environment under a theory of direct or vicarious liability. *Wolfe*, 488 F. App'x at 469 (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

As relevant here, the fourth element of a harassment claim has a subjective and an objective component. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). The employee must subjectively perceive the harassment as severe or pervasive enough to alter the terms and conditions of her employment and create a discriminatorily abusive work environment, and her subjective perception must be objectively reasonable. *Id.* An employee's subjective perception is objectively

reasonable if a reasonable person in her position would consider the harassment hostile or abusive, considering all of the circumstances. *Id.* Factors relevant to the objective component include (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating or, rather, a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id.* A court must consider the conduct complained of collectively and determine whether a hostile work environment is demonstrated by a totality of the circumstances. *Id.* These standards are designed to ensure a federal statute does not become a " 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Properly applied, they exclude offhand comments, isolated incidents (unless extremely serious), and the "sporadic use of abusive language" from actionable conduct. *Faragher*, 524 U.S. at 788 (internal quotation marks omitted).

The fifth element of a hostile work environment claim requires a plaintiff to show her employer had actual or constructive notice of severe and pervasive harassment and failed to take sufficient corrective action. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003). An employer is not liable for harassment of which it had actual or constructive notice provided it took sufficient corrective action. *See id.* at 1261 (describing the response required as "immediate and

appropriate" corrective action"); *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1287-88 (11th Cir. 2018) (describing the response required as "prompt" corrective action); *Miller*, 277 F.3d at 1278 (same); *Henson v. City of Dundee*, 682 F.2d at 897, 905 (11th Cir. 1982) (same). The corrective action must be reasonably likely to prevent the harassment from recurring. *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996). The adequacy of the corrective action must be determined on a case-by-case basis. *Johnson v. Austal, U.S.A., L.L.C.*, 805 F. Supp. 2d 1299, 1317 (S.D. Ala. 2011).

### a.    Disability-Based Harassment Claim

The plaintiff relies on allegations contained in her amended complaint and deposition testimony regarding Alford's interest in the nature of her disability to support her disability-based harassment claim. (Doc. 46 at 17). The plaintiff alleged in her amended complaint that Cheryl Crane, a nurse at GFED, and two other co-workers harassed her because of her disability, including by making jokes about her missing work because of her depression. (Doc. 10 at 3, 6-7). She reiterates the allegations in her response to the defendants' summary judgment motion as a reason to deny the motion as to her disability-based harassment claim. (Doc. 46 at 17). However, at the summary judgment stage of a case, the court is not concerned with what a plaintiff has alleged; it is concerned with whether a plaintiff has come forward with evidence sufficient to create a genuine issue of fact for trial regarding the

essential elements of a claim. *Celotex Corp.*, 477 U.S. at 324; *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (holding allegations of complaint were not sufficient to defeat summary judgment); *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1314 (S.D. Fla. 2021) (holding plaintiff could not "rest on the allegations of his complaint in making a sufficient showing on each element for the purposes of defeating summary judgment") (internal quotations marks omitted and alteration adopted). The plaintiff has not directed the court to any evidence, as opposed to mere allegations, that Crane or any other co-worker made jokes about her missing work because of her depression.[9],[10]

The plaintiff testified when deposed that "management" inquired into the nature of the health condition for which she was taking intermittent FMLA leave "constantly" and identified Alford as one of the members of "management" who made the inquiries. (Doc. 40-7 at 29). This testimony, unlike the allegations discussed above, is evidence. However, it falls far short of creating a triable issue

---

[9] In fact, the plaintiff testified she did not know of any negative comment Crane or other co-workers made about her mental health conditions. (Doc. 40-7 at 32).

[10] Although the plaintiff does not marshal the evidence in support of her disability-based harassment claim, the court notes UABHM has directed the court to evidence Crane may have followed the plaintiff around, inappropriately delegated tasks to her, criticized her work, and taken photos of her and her work. (Doc. 41 at 6). Setting aside the question of whether the conduct was harassing, there is no evidence Crane subjected the plaintiff to the conduct because of her mental health conditions. *See Stedman v. Bizmart, Inc.*, 219 F. Supp. 2d 1212, 1223 (2002) (holding plaintiff failed to establish *prima facie* case of disability-based harassment where there was no evidence conduct, although upsetting to plaintiff, related in any way to plaintiff's claimed disability). In fact, the plaintiff testified neither Crane nor her other co-workers knew about her mental health conditions. (Doc. 40-7 at 32).

as to whether the plaintiff was subjected to harassment so severe or pervasive that it altered the terms and conditions of her employment. The inquiries about which the plaintiff testified were not physically threatening. On the spectrum between humiliating and merely offensive, they fall closer to the latter. Moreover, the plaintiff cites no evidence suggesting the inquiries affected her job performance. No reasonable jury could conclude the inquiries satisfy the fourth element of a disability-based harassment claim. *Cf. Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 440-41 (E.D. Pa. Apr. 19, 2023) (holding plaintiff's deposition testimony that human resources employee made comments "about [the plaintiff] being sick" and that "if [the plaintiff] called out sick . . . [the human resources employee] was like, oh, [the plaintiff] has lots of issues . . . and things like that" failed to create triable issue as to whether plaintiff endured severe or pervasive harassment). Therefore, UABHM is entitled to summary judgment on the plaintiff's disability-based harassment claim.

### b.    Race-Based Harassment Claim

The plaintiff relies on three comments made by Ali (the medical scribe) and two comments made by Hatcher (the main hospital Nurse Manager) to support her race-based harassment claim. (Doc. 46 at 19-21). Ali's comments are offensive, but the plaintiff has failed to come forward with evidence on which basis the defendants could be held responsible for them. An investigation was commenced by Alford,

Wallis, and others the same day the complaints regarding Ali's August 1, 2019 comment were received, and the defendants learned of Ali's earlier comments only when the plaintiff was interviewed in connection with the investigation. (Doc. 40-8). Following the investigation, UABHM never "returned" Ali to work at GFED, and Carter was counseled about the incident. (Doc. 40-6 at 14-16).[11] The Eleventh Circuit has held counseling of a harasser is sufficient corrective action. *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1305 (11th Cir. 2007) (citing *Fleming v. Boeing Co.*, 120 F.3d 242, 246-47 (11th Cir. 1997)). It follows that counseling of someone who might be characterized as an accessory to the harasser is sufficient corrective action, and that corrective action beyond counseling – here, cessation of a working relationship – suffices to address the conduct of the actual harasser.

The court is skeptical the plaintiff has come forward with evidence on which basis the defendants could be held responsible for Hatcher's offensive comments, either. The plaintiff was transferred to GFED after reporting the comments and had no further issues with Hatcher. (Doc. 40-7 at 18). Even if there is room to quibble with the sufficiency of the corrective action taken after the plaintiff reported

---

[11] The plaintiff asserts in her response to the defendants' summary judgment motion that Ali was never disciplined for her comments. (Doc. 46 at 20). She cites no evidence to support the assertion. Whatever discipline the plaintiff believes Ali should have received, the plaintiff does not dispute the evidence that Ali did not return to work at GFED after the investigation into her comments, and as discussed below, that result constitutes sufficient corrective action.

Hatcher's comments, the plaintiff's race-based harassment claim would fail because the comments did not constitute harassment so severe or pervasive that corrective action was required.  Like the inquires into the plaintiff's FMLA-qualifying health conditions, Hatcher's comments were not physically threatening, are better characterized as offensive than humiliating, and are unaccompanied by citation to evidence they affected the plaintiff's job performance.  They are the type of isolated, offhand comments excluded from actionable conduct.  *See, e.g., McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008) (holding that, although offensive, four incidents involving racially derogatory language over more than two-year period did not constitute severe or pervasive harassment); *Fortson v. Carlson*, 618 F. App'x 601, 607 (11th Cir. 2015) (holding that, although patently offensive and disturbing, nine incidents involving racially derogatory language over seven months did not constitute severe or pervasive harassment).  For these reasons, the defendants are entitled to summary judgment on the plaintiff's race-based harassment claim.[12]

### 2.    FMLA Interference Claim

The FMLA entitles eligible employees to leave for certain family and medical reasons.  *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021) (citing 29 U.S.C. §§ 2601 and 2612).  To preserve and enforce the right, the

---

[12] The court declines to address the additional argument made by Alford and Wallis that they are entitled to summary judgment because there is no basis to hold them individually liable for race-based harassment under § 1981.  (Doc. 42 at 11-13).

statute creates a claim for interference with the right. *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citing 29 U.S.C. § 2615(a)(1)). To prove an FMLA interference claim, a plaintiff must show she was denied a benefit to which she was entitled under the FMLA. *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267-68 (11th Cir. 2008).

The plaintiff's principal contention is that UABHM misinformed her regarding her entitlement to receive donated time while taking intermittent FMLA leave. (Doc. 46 at 21-22). Assuming so, any interference would not be with the plaintiff's FMLA rights but, rather, with her "rights" under UAB's Sick Time Donation Procedure. That type of "interference" is not actionable under the FMLA. *Cf. Becknell v. Univ. of Ky.*, 383 F. Supp. 3d 743, 756-57 (E.D. Ky. 2019) (holding refusal to allow employee to use paid leave accrued under employer's internal policies while on FMLA leave did not constitute FMLA interference because, even if there was a right to paid leave under employer's internal policies, there is no right to paid leave under FMLA).

The plaintiff also may contend UABHM interfered with her FMLA rights insofar as Alford "encouraged" her to resign – or even "demanded" that she do so – after she exhausted her paid, intermittent FMLA leave. (Doc. 46 at 9, 22). The plaintiff cites the transcript of the audio recording of the July 27, 2021 meeting as evidence of the demand or encouragement. However, the transcript is not evidence

Alford encouraged or demanded the plaintiff to resign. It is evidence of the opposite. Alford directly and unequivocally denied the plaintiff was being asked to resign and clarified she was presenting the plaintiff with the option to do so if she did not want to take unpaid, intermittent FMLA leave. (Doc. 40-21 at 7). Alford also denied the plaintiff's accusation that she had said the plaintiff could not use the rest of her intermittent FMLA leave if the plaintiff did not resign. (Doc. 40-21 at 8). Because the plaintiff has failed to come forward with evidence to support her claim UABHM interfered with her FMLA rights, UABHM is entitled to summary judgment on the FMLA interference claim.

### 3. Retaliation Claim

The Rehabilitation Act, § 1981, and the FMLA all prohibit retaliation for opposing statutorily-prohibited discrimination. *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011) (explaining Rehabilitation Act incorporates anti-retaliation provision of Americans with Disabilities Act at 29 U.S.C. §§ 791(g), 793(d), and 794(d)); *Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1363 (N.D. Ga. 2014) (discussing § 1981); *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020) (discussing anti-retaliation provision of FMLA codified at 29 U.S.C. 2615(a)(2)). Absent direct evidence of retaliation, courts use the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze retaliation

19

claims. *Burgos-Stefanelli*, 410 F. App'x at 245-46 (Rehabilitation Act retaliation); *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009) (§ 1981 retaliation); *Lapham v. Walgreen Co.*, 88 F.4th 879, 889 (11th Cir. 2023) (FMLA retaliation).[13]

Under this framework, a plaintiff first must establish a *prima facie* case of retaliation by showing (1) she engaged in a protected activity, such as reporting discrimination, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Burgos-Stefanelli*, 410 F. App'x at 246 (Rehabilitation Act retaliation); *Bryant*, 575 F.3d at 1307-08 (§ 1981 retaliation); *Lapham*, 88 F.4th at 889 (FMLA retaliation). If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment action. *Burgos-Stefanelli*, 410 F. App'x at 246 (Rehabilitation Act retaliation); *Bryant*, 575 F.3d at 1308 (§ 1981 retaliation); *Lapham*, 88 F.4th at 889 (FMLA retaliation). If the defendant does so, the burden shifts back to the plaintiff to show the proffered reason is pretextual. *Burgos-Stefanelli*, 410 F. App'x at 246 (Rehabilitation Act retaliation); *Bryant*, 575 F.3d at 1308 (§ 1981 retaliation); *Lapham*, 88 F.4th at 889 (FMLA retaliation).

The plaintiff claims the defendant terminated her employment in retaliation for complaints of discrimination she made throughout the time she was employed

---

[13] There is no direct evidence of discriminatory retaliation here.

by UABHM.  (Doc. 46 at 24-25).  The court assumes without deciding that the plaintiff has established a *prima facie* case of retaliation under the statutes invoked and proceeds to the second step of the *McDonnell Douglas* burden-shifting framework.[14]  To satisfy its burden at this step, the defendants assert the plaintiff's employment was terminated because of her inappropriate and unprofessional behavior during the July 27, 2021 meeting.  (Doc. 41 at 23-24).[15]  Inappropriate and unprofessional behavior is a legitimate, non-retaliatory reason for taking adverse action against an employee.  *See, e.g., Entrekin v. City of Panama City, Fla.*, 367 F. App'x 987, 997 (11th Cir. 2010) (holding insubordination was legitimate, non-retaliatory reason for terminating employment); *Sadeghi v. Inova Health Sys.*, 251 F. Supp. 3d 978, 993 (E.D. Va. 2017) ("Insubordination is a legitimate, nondiscriminatory reason for discharge . . . .") (collecting cases), *aff'd*, 711 F. App'x 174 (4th Cir. 2018); *Hartley v. Rubio*, 785 F. Supp. 2d 165, 178-79 (S.D.N.Y. 2011) ("It is well-settled that an employer may permissibly terminate an employee based on inappropriate comments, perceived insubordination, or disruptive behavior in the workplace.") (collecting cases).  The burden therefore shifts back to the plaintiff to

---

[14] The court notes it is not clear what complaints the plaintiff claims to have made regarding harassment she experienced because of her disability.

[15] The burden is one of production, not persuasion.  *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).

show the proffered reason was pretextual.  The plaintiff makes two attempts to satisfy her burden at this step of the *McDonnell Douglas* burden-shifting framework.

### a.    First Attempt

The plaintiff first disputes that her behavior during the July 27, 2021 meeting was inappropriate or unprofessional.  (Doc. 46 at 8).  There are evidentiary and legal problems with this attempt to establish pretext.  The first evidentiary problem is that the plaintiff cites no evidence to support her contention that her behavior during the meeting was not inappropriate or unprofessional – for example, a declaration stating the audio recording of the meeting and transcript of the audio recording are inaccurate or denying she interrupted Alford and Wallis, raised her voice, or exhibited body language that was aggressive.  The plaintiff's contention is limited to statements made by her counsel in her response to the defendants' summary judgment motion.  However, assertions made by counsel in a brief are not evidence. *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).[16]  Therefore, the audio recording, transcript, and statements made by Alford and Wallis in their declarations remain uncontroverted.

The second evidentiary problem for the plaintiff is the fact that there is an audio recording of the meeting.  The audio recording corroborates the statements

---

[16] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

made by Alford and Wallis in their declarations that the plaintiff interrupted them and that her voice became progressively louder.  "It is true [courts] construe the facts in the light most favorable to the non-moving party."  *Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015).  "But when 'opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it,' a court should not adopt the contradicted version for purposes of ruling on a motion for summary judgment."  *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "This is so because when the non-movant's assertion is 'so utterly discredited' by the record, no 'genuine' dispute of material fact exists sufficient to prompt an inference on behalf of the non-movant."  *Id.* (quoting *Scott*, 550 U.S. at 380).  Therefore, even if the plaintiff had, for example, submitted a declaration stating she did not interrupt Alford and Wallis or raise her voice during the meeting, the declaration would not create a genuine issue of fact for trial.  It would be so clearly contradicted by the audio recording that no reasonable jury could believe it.

Apart from these evidentiary problems with the plaintiff's first attempt to establish pretext, there is a legal problem.  "[An] employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984).  The Eleventh Circuit has "repeatedly and emphatically" reaffirmed this holding.  *Flowers v. Troup*

*Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015). This means that to create a genuine issue for trial as to whether the stated reason for her termination was pretextual, the plaintiff would have had to come forward with evidence not only that her behavior during the July 27, 2021 meeting was not inappropriate or unprofessional but also that Alford and Wallis did not honestly believe her behavior was inappropriate or unprofessional and, instead, used the plaintiff's purported behavior during the meeting as cover for retaliating against her for opposing statutorily-prohibited discrimination. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (holding employee's assertion she was not insubordinate did not alone establish she was terminated because of her sex), *abrogated on other grounds by Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019); *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002) ("A plaintiff trying to show pretext based on a defendant's dishonest belief of the grounds the defendant gave for his decision does not succeed by presenting evidence that the defendant was mistaken about the facts upon which he based his alleged non-discriminatory decision. Instead, a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-discriminatory decision."); *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (holding question was not whether employee was, *inter alia*, aggressive and rude to her colleagues and

24

superiors; question was whether employer was dissatisfied with employee for that and other non-discriminatory reasons, even if mistakenly or unfairly so, or instead used those complaints about employee as cover for discriminating against her because of her Cuban origin).  In other words, even if the plaintiff had come forward with evidence to support her contention that her behavior during the July 27, 2021 meeting was not inappropriate or unprofessional, the evidence would not be legally sufficient to create a genuine issue for trial regarding pretext.  *See Fripp v. City of Atlanta, Ga.*, 2024 WL 3983345, at *3 (11th Cir. Aug. 29, 2024) ("A plaintiff's showing that the employer was simply incorrect in its decision is insufficient.").

### b.    Second Attempt

The plaintiff also argues a reasonable jury could conclude the temporal proximity between complaints of discrimination she made between April 2021 and July 20, 2021, and the termination of her employment on August 18, 2021, renders the stated reason for that adverse action unworthy of credence.  (Doc. 46 at 26-27).  "Very close" temporal proximity between a protected activity and an adverse employment action may allow an inference of pretext.  *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1309 (11th Cir. 2023).  However, "the intervening discovery of employee misconduct can sever the [] inference created by close temporal proximity."  *Berry*, 84 F.4th at 1309.  For example, in *Berry*, the plaintiff made several complaints about race-based discrimination, including in the days

before termination of her employment. *Id.* at 1305-06. After the plaintiff made those complaints, her employer learned she had bullied coworkers and caused several of them to quit. *Id.* at 1306. In affirming summary judgment for the employer, the Eleventh Circuit held the intervening discovery of misconduct, which was the employer's stated reason for terminating the plaintiff's employment, undercut any inference of pretext allowed by the temporal proximity between the plaintiff's complaints and the adverse employment action. *Id.* at 1309-10. As in *Berry* the plaintiff's conduct that Alford and Wallis viewed as inappropriate and unprofessional occurred after the complaints of discrimination the plaintiff offers as evidence of pretext and severs any inference of pretext otherwise allowed by that evidence.

The plaintiff has not come close to satisfying her burden at the third step of the *McDonnell Douglas* burden-shifting framework. She has failed to come forward with evidence creating a genuine issue for trial as to whether the defendants' stated reason for terminating her employment – a legitimate, non-retaliatory one – was pretextual. That reason therefore stands, and the defendants are entitled to summary judgment on the plaintiff's retaliation claim.

## IV.    Conclusion

For the reasons stated above, the court will **GRANT** the defendants' motion for summary judgment (Doc. 39) and **ENTER JUDGMENT** in the defendants'

favor.  A separate order will be entered.

**DONE** this 30th day of September, 2025.


_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE